NATIONAL LABOR RELATIONS BOARD
v. KINNER MOTORS, Inc.
Nos. 10984, 10956.

Circuit Court of Appeals, Ninth Circuit.
Dec. 29, 1945.

As Amended Jan. 9, 1946.
Decree Amended March 26, 1946.
Rehearing Denied March 29, 1946.

Alvin J. Rockwell, Gen. Counsel, N.L.R.B., Malcolm F. Halliday, Associate Gen. Counsel, Owsley Vose and Thomas C. Marshall, Attys., N.L.R.B., all of Washington, D. C., for petitioner.

Victor Ford Collins and Arnold Cannan, both of Los Angeles, Cal., for respondent.

Before DENMAN, STEPHENS and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

Petitions by the Board for enforcement of orders of the National Labor Relations Board in cases No. 10,984 and 10,956 are before us. The general activities of respondent-corporation extend over and across state lines and constitute interstate commerce. Therefore the corporation is subject to the jurisdiction of the National Labor Relations Board under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.

In case No. 10,956 respondent states that the International Association of Machinists, Lodge No. 311, affiliated with the American Federation of Labor, is now the duly chosen bargaining representative of respondent's employees and withdraws opposition to the enforcement of the order made in that case with one exception.

The cease and desist part of the order is as follows:

"1. Cease and desist from:

"(a) Dominating or interfering with the administration of, or contributing support to, Kinner Motors Employees Association, Inc., and dominating or interfering with the formation or administration of, or contributing support to, any other labor organization of its employees;

"(b) Giving effect to its contract of June 16, 1943, with Kinner Motors Employees Association, Inc., or to any revision, renewal, extension, modification, or supplement thereof or to any superseding contract which may now be in effect;

"(c) In any other manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, to form labor organizations, to join or assist International Association of Machinists, Lodge No. 311, affiliated with the American Federation of Labor, or any other labor organization, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purposes of collective bargaining or other mutual aid or protection as guaranteed in Section 7 of the Act."

Respondent moves to strike paragraph (c).

Without reciting it, it is sufficient to say that the evidence indicates an active opposition on behalf of respondent to the unionization of its employees under an "outside" union and active encouragement of a "company" union. The part of the cease and desist order which applies directly to the acts complained of are sufficient to cover the matter.

■ 1(c) of the order is all inclusive of the statement of employee rights contained in § 7 of the Act. In our opinion such order is directly in conflict with the salutary statement of the Supreme Court in National Labor Relations Board v. Express Publishing Company, 1941, 312 U.S. 426, at page 435, 61 S.Ct. 693, 699, 85 L.Ed. 930, wherein it is said: "* * * But the mere fact that a court has found that a

defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged * * *." In May Department Stores Co. v. National Labor Relations Board, 1945, 66 S.Ct. 203, 213, it is held that an omnibus cease and desist order will not be approved unless there is a "clear determination by the Board of an attitude of opposition to the purposes of the Act to protect the rights of employees generally."

■ The Board's order in this case is ordered amended by striking paragraph 1 (c). The Board's order in the affirmative part thereof requires a posting of notice containing several items, one being that respondent will not engage in the conduct from which it is ordered to cease and desist in paragraph 1(a), (b) and (c) of the order. The reference to (c) should be eliminated.

In case No. 10,984 the Board has ordered Davis, Gilpin and Swope, respondent's employees, who were ordered discharged by respondent, reinstated with pay. The issue as to all three of these employees turns on the view of the evidence that is taken by the fact finding body. There is evidence from which an inference can reasonably be drawn that the discharges of the three men were because of their union activities.[1] Respondent counters with evidence which would support the inference that these men were discharged because respondent had no work for them.

---

[1] The three men who were laid off were experienced men and had been in respondent's employ for several years at progressively increasing pay. They appear to have been satisfactory workmen. At the hearing upon the charge that respondent was interfering with the free organization of the employees and supporting the inside union, Davis was a principal Board witness. (Section 8(4) of the Act. "To discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act.") Gilpin and Swope attended the hearings and associated closely with Davis. These three men signed outside union cards and wore union buttons. There is testimony that one of the foremen had remarked that "those damn fools over in the tool room [Davis, Gilpin and Swope, constituted the night shift] are just a bunch of trouble makers * * * if they didn't care to belong to the Kinner Union * * * they didn't have to cause the trouble of bringing it up before the Labor Board." A coldness on the part of the supervisory officials began immediately after the hearing and in about a month the three were laid off "for lack of work." It was contended that this resulted from cancellation of contracts, yet there were no other discharges in the plant where Davis, Swope and Gilpin worked which are attributable to the cancellation. During this period Plant 2, across an alley from Plant 1, was in operation and actually took on new employees for work similar to that performed by Davis, Swope and Gilpin.

■ At this late day it is not at all useful to cite authority to the effect that this court is not given the power to weigh the evidence. If, after we have reviewed the case, we find there is evidence in it of a substantial character in support of the Board's order, our discretion on this score is ended. Respondent does not, in terms, deny this principle. However, he seeks to have us take the testimony of supervisory officers to the effect that the discharge of Davis, Gilpin and Swope was solely on account of work. That these three men had been active in labor matters is established, and the Board was not convinced that the real cause of the discharge was lack of work. The plant was rather a large one, and there is ample room in the circumstances for the inference that but for their labor activities room would have been found within the organization for these men.

■ The further point is made that Gilpin and Davis deprecated the good quality of war bonds, the Red Cross, and the country. There is some testimony that one expressed a doubt about the country's ability to pay its bonded indebtedness. All of such testimony was submitted to the trial body, the Board. If the Board believed that such base remarks had been made, it could reasonably have viewed them as so much loose, irresponsible talk. At any rate the Board did not find that such asserted expressions had any part in the discharges. It affirmatively found another cause.

The omnibus paragraph is ordered stricken and incidental changes to conform are ordered for the same reasons expressed in case No. 10956.

The Board's orders, amended in accordance herewith, are ordered enforced.